Good afternoon, I guess it is, Mr. Christmas. We'll hear from you. Yes. Good afternoon. May it please the court. My name is Gerald Christmas, and I represent the appellants Kena and Azim Aziz in their request that this court reverse the district court's order granting a motion for judgment as a matter of law for their failure to submit any evidence of value. Mr. and Mrs. Aziz owned a home that was destroyed by fire on May 12, 2006. The home was located at 4931 Claxton in St. Louis, Missouri. They had a home insurance policy with Allstate Insurance, which covered their personal property for the amount of $30,000 and their home for the amount of $60,000. Allstate requested from Mr. and Mrs. a list of personal property that they lost in the fire, and they submitted a list of what they believed to be the property that they lost in the fire, which totaled $94,825. Their claim was only for what their policy limit was, it said, in their insurance policy. Allstate, after a year, denied their claim in 2007 for both their personal property and the house that was destroyed, also in the fire. In March of 2014, we filed suit for a breach of contract and vexatious refusal. And that case was tried on September the 6th, 2016. And Allstate was granted a motion for judgment as a matter of law. It is our position that we provided reasonable and competent evidence of value. They listed the property and the value of that property, which was submitted as evidence in the trial. Are you talking about Exhibit M? Yes, Exhibit M. Is that the replacement value that's listed on Exhibit M? That value, yes, that's the replacement value, because everything was totally destroyed in the fire. Along with that, we submitted pictures of the fire so that the jury would be able to see the damage that was done to the material that was listed and the damage that was done to the property. So when you say replacement value, do you mean that the dollar amounts listed were the amounts it would take to buy a new pair of pants or whatever the item is that was listed? They were estimating what they felt was the price that they paid for. What they paid at the time they bought it. At the time that they bought it. So what's your position on depreciation, so to speak, and how that should be figured into the analysis? Depreciation can be figured into the analysis for the property that was not new. This was a mixture of property that was both, Mrs. E said she had brand new items that she had purchased, and then they also had items in a household that they had accumulated over a number of years. So, for example, they had bed sheets and towels and different things that they'd had for some time, and they would suffer some depreciation. And then they also had items that they had purchased that were new. The issue was that they were also getting a divorce, and Mr. Ezees was turning the house over to Mrs. Ezees. So they were in the process of moving items back and forth to the house. He had moved some of the furniture, small amounts. Let's focus on the value, because I think that was what Judge Jackson was concerned about as I read the transcript. Correct. She gave the example of the towel, you remember that? And I think her concern was a jury couldn't come up with a valid number if you just told them how much the people paid for the items when they bought them. What, do you have a response to that? Because I think that's really what it comes down to on the property, the personal property. I think a jury, a reasonable jury can look at the value that they assess for those items, because jurors also purchase items. They have those same household goods, so they have a general idea. If you say that a bath towel costs $500 or something exorbitant versus what we normally know a bath towel to cost, that they can look at that and make a determination. Along with, when we talk about the real property, because Mrs. Ease was involved in a bankruptcy, the bankruptcy petition was also admitted into evidence which indicated the value of the house. On the depreciation, are you saying that it would be just simply a jury determination without any additional evidence except how old the item is? I mean, was there evidence of, well, these towels are 10 years old, this pair of jeans is two years old, are you saying then the jury is just to kind of conclude that on their own? Well, in testimony at trial, they did testify to, in cross-examination, they were crossed on the list and they gave examples of the age of the individual items on the list. They didn't do it item by item, but I think- They didn't do it item by item, they would just, randomly they looked at items on the list. I thought- Go ahead. Oh, I'm sorry. Because they highlighted certain things on the list and they commented on the things that were highlighted on the list. I thought at one point, Mrs. Ease said something about 10 or 15 years or 10 years that the stuff had been either purchased 10 or 15 years ago or gathered over 10 or 15 years, something to that effect. She did, correct. Yeah. So I suppose a jury, conservatively, a jury could say, well, we'll just say all this stuff's at least 10 years old. They could also do that. They also, the jury is limited by the policy limits because regardless of the number that they submitted, the personal property was only insured up to $30,000. So that was the limit in the policy. So nothing could go outside in payment above that limit. And then I want to talk about the vexatious refusal claim, which is our belief was willful and without a reasonable cause. But you have to win on the other two to get vexatious refusal, right? Under Missouri law? That's correct. Yeah, go ahead. That's correct, Your Honor. We feel that even if all state had a controversy over the personal property claim, there was no controversy over the real property. The fact that the house was damaged in the fire and that there was no indication that the Aziz's had anything to do with the fire. We know that the fire was set by an outside person who was subsequently charged with arson. There was no reason not to repair their house, to put them under those circumstances, to delay fixing their material, to have a difficult time in dealing with them. And we felt that we met our claim for a vexatious refusal in regards to that. What I would like to do is reserve the remainder of my time for rebuttal. You may, thank you for your argument. Mr. Brady, we'll hear from you. Thank you. Good morning, Your Honors. And may it please the court. Robert Brady on behalf of all state. Of course, our position here this morning is that the district court's judgment as a matter of law and on both claims, the breach of contract claim and the vexatious refusal claim should be affirmed. I'd like to start with the breach of contract claim. And the first thing I would say about the breach of contract claim is that the proper measure of damage pursuant to Missouri's statute, Missouri's partial fire law statute, and also pursuant to the insurance policy, which is consistent with the partial fire law statute, is that the proper measure of damage is the difference in value immediately before and immediately after the fire loss. And there's a long line of cases interpreting the language in the partial law statute, which is 379.150, and also the language of the insurance policy's lost settlement provisions. The first thing I would say is that with respect to the measure of damage, to the extent that that's disputed, and it appears that it may be from the briefing here, at trial, there was no dispute as to the measure of damage. And the appellants at trial tendered a proposed damage jury instruction, which set forth what we believe to be the applicable measure of damage, which again is difference in value with respect to both the structure and the personal property. So I don't think there's any real dispute here as to what the proper measure of damage is. All right, well then, why don't we talk about how a jury can calculate it, because I think Mrs. Aziz testified the stuff on Exhibit M was all destroyed. If we want to talk about the personal property first, you'll remember what I would say. Let me just pose a question about it, because my concern is she testified all the things on Exhibit M were destroyed, so we know the value after the fire was zero. If you take that as a given for my question, you may, I think a jury reason, let's say a jury maybe reasonably could infer that she said that. And so then she says at another place that these things had been gathered over, that she'd had them for 10 years, or over 10 years. Now, are you saying that a family that has their house burned down and is trying to get a recovery for blue jeans and T-shirts and towels and so forth has to have an expert come in and say how much a towel is worth after 10 years? Or can a jury just like it would, can a jury just use common sense and say, well, this towel was purchased for $20 10 years ago, and we'll give them $5 for it? I'm not saying either, Your Honor. Certainly not saying. Well, how is a jury supposed to do it? I'm not saying that there is expert testimony necessary. As the court is very aware, an owner of property, whether it be real property or personal property, is always competent to testify as to value. There's no question about that. And the way that they're supposed to do it and the way it's always done, Your Honor, it's two very simple questions. Mrs. Ease, do you have an opinion as to what the value of your personal property was immediately before the fire? Yes, I do. What was it? Mrs. Ease, do you have an opinion as to what the value of the property was immediately after the fire? Yes, it was zero. That's the way that it's done in every one of these cases, Your Honor. It wasn't done here. It's that simple. With respect to- It's that simple. It would have been submissible case if they had asked or give us your best estimate as to how much this was worth right before the fire. It is their burden and they have to present some evidence, some competent evidence. That's not my question. My question is, would it have been a submissible case if she had testified, my best estimate as to each of these items before the fire is that it was worth X. And then they were all destroyed, so they're now worth zero. Yes, it would have. That would have been a submissible case. If she would have given her best opinion as to before value, which she did not, or anything remotely close to it. But if she would have done that, then yes, as to the personal property. But a jury can't, you don't think a jury can say, well, I donate stuff to Goodwill all the time and we get tax deductions for used clothing. They can't just say, well, these clothes were purchased 10 years ago and it's a used suit, so we'll give it $50. Well, that's very speculative. No, I don't think that's beyond the- Well, how is that any different than her saying I think it was worth $50? She's the owner, Your Honor, and she's in the best position to make that opinion. The jurors don't own the property. She doesn't. As you pointed out during your questioning of Mr. Christmas, you have a list here and you have items that are differing ages, differing types of items. These jurors aren't experts. They don't understand or know how to calculate depreciation. I think that that's well beyond the realm of- I thought you just said we don't need an expert. Mrs. Aziz isn't going to be able to calculate depreciation. But she, as an owner, she is competent to give an opinion. That's what the law is, and she did not give that opinion, Your Honor. I mean, again, the only evidence of value as to the personal property that was submitted was this Exhibit M, which was the personal property inventory forms that were submitted. We've heard two different things about that, but I think what I'm hearing this morning is that what they're saying is this is what these items cost when we bought them, whenever that was. Well, I thought your Exhibit M said at the top of it, replacement cost. Well, and that may be where some of the confusion stems from, Judge Bender. You put in the Exhibit M, right, for starters. On the cross-examination of the fraud issue, yes, sir. You put in the list of all the stuff. Yes, sir. And that the column on Exhibit M, it's been a while since I looked at it, it said replacement cost, right? There is a column that says replacement cost. And that's where the numbers were, right? That is correct. Is that the only values that were on that form? That's my memory, yes, Your Honor. OK. Yeah, and I didn't, I don't know if you had a question on the floor or not, Your Honor. But what I would say was that whether we're talking about replacement cost, meaning what would it cost us to buy this after the fire, or this is what it cost us back whenever we bought this stuff, neither one of those constitute the actual cash value immediately before the fire. Neither one of those numbers meet that burden, in my opinion. And so I don't think that there's sufficient evidence at all with respect to the before value, the value of the personal property immediately before. I think the district court correctly concluded that. And I don't concede the point that there was sufficient evidence of after value, because I think there's, at a minimum, conflicting testimony in that regard, simply to the effect that not all of the personal property was destroyed, and also not all of the personal property was even in the home. So I don't think there's sufficient evidence of either, but certainly not before value. Now, with respect to the house, there is no evidence of the value immediately before or after. We've now heard for the first time on appeal that the appellants want to contend that the bankruptcy petition that was admitted into evidence by Allstate to cross-examine on the fraud issue is somehow evidence of the before value of the home. The only thing I would say to that is, the filing date on that bankruptcy petition was one year and nine months before this fire occurred. So that's not evidence of value of the home immediately before the fire. And even beyond that, I think it's a little disingenuous to say when this exhibit was not referenced in that context, it wasn't admitted by the appellants at trial for that context. But you got it in, right? We put it in on the issue of fraud, Judge Benton. No, no, you put it in evidence. We put it into evidence on the issue of fraud. There was no reference whatsoever as the transcript reflects with respect to the value of the home as it was contained in that bankruptcy petition. So I just simply don't think that there's sufficient evidence of before or after value with respect to the real property here. I would address very quickly the vexatious refusal claim. And I think it's because my time is running short. The only thing I would say is this work when a person has their house burned down and they want to get paid back for, or they want to recover for the replacement value of clothing, and they don't have receipts from every pair of blue jeans that they bought, and they don't have photographs of every pair of pants in the closet, they go to you and they go to Allstate and say, we had 10 pairs of blue jeans. What are they supposed to do to get recovery? Judge, if you're just asking me in a general sense how claims are adjusted, they fill out the forms. And excluding any sort of a coverage issue, let's just assume that there's coverage for it. The only issue here, as I understood it, was valuation. Well, there's intentional misrepresentation and fraud, Your Honor. To answer your question, and again, I'm running short here, but if there is no coverage issue, and you're asking me how does this work, assuming there's no coverage issue, they present the personal property inventory forms. Allstate reviews the forms. Assuming no issue with the forms, the payment is initially issued on an actual cash value basis. Allstate is the one that applies the appropriate level of depreciation as the company sees fit. They have depreciation schedules and tables and things that they make. Well, I guess that's my question. If you admit that Allstate typically just does that depreciation. But it's the appellant's burden in front of the jury in a case like that. They could have put somebody from Allstate on the stand, Your Honor, and said, Maybe they should have done that. You guys normally do. I mean, you say it was an intentional misrepresentation of a fraud case, but the district court's ruling was based on valuation. We never got that far. Right, that's my point. We never got that far. But again, and I know I'm beyond, but the burden, you know. Normally they could send in what they send in, exhibit him to you. And if there was no fraud issue, you guys would, Allstate would run a depreciation and send him a check. Make him send him a check for actual cash value, and then if it's a replacement cost policy, if they actually go out and replace, then they get the recoverable depreciation. But Judge, that's a whole lot different than in front of a jury in a fraud case and having the burden to present damage evidence and not doing it. I mean, to me, that's two totally different things here. I've seen cases where they'll plop the contents adjuster up on the stand in the plaintiff's case in chief and say, you know, you tell us what the value of this stuff was before. And that's the evidence of it. They get it in through the Allstate representative. Okay, thank you for your argument. Mr. Christmas, I think you had a couple minutes remaining. Yes, Your Honor. Sounds like maybe you should have called the Allstate adjuster. Yes, that's possible, Your Honor. I disagree, though, that this was a fraud issue. My clients were asked to indicate the loss that they suffered as a result of this fire, and that's what they did. They indicated on a list everything that they lost. They were well aware that their coverage was only to the limit of $30,000. They were only doing what they were asked to do by the insurance company, is to itemize the list of things that they lost. They were not told, itemize a list based on your coverage and only put up to what you feel to be $30,000. They were told just to list what they lost, and that's what they did, and they listed the value based on that, and they were anticipating that the contract that they had with the Allstate insurance company would be upheld after they suffered the fire, and I think that enough evidence was submitted for a reasonable jury to make a determination on value in this case based on the policy, and I would ask that you reverse the district court's decision. Thank you. All right, thank you. The case is submitted, and the court will file an opinion in due course. That completes the argument calendar for this morning. The court will be in recess until 8.30 tomorrow morning.